UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| COUNTRYWIDE HOME LOANS, INC., )<br>)<br>Plaintiff,                             )<br>v.                                                  )<br>)<br>)<br>COMMONWEALTH LAND TITLE )<br>INSURANCE COMPANY, and        )<br>FIDELITY NATIONAL TITLE GROUP, )<br>INC.,                                              )<br>Defendants.                        )<br>_____) | Civil Action No.<br><br>**VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      By this action Countrywide Home Loans, Inc. ("Countrywide") seeks, among other things, a declaration that Commonwealth Land Title Insurance ("CLT") and its successor in interest Fidelity National Title Group (collectively "Fidelity"), are obligated to defend and if necessary indemnify it against claims asserted in a civil action filed in Plymouth County Land Court, captioned <u>Countrywide Home Loans, Inc. v. Denise Bruce et al</u>, Civil Action No. 08 MISC 386939 (the "Action"). Countrywide's claim arises out of a policy of title insurance issued by Fidelity insuring, among other things, that Countrywide had a valid, enforceable first mortgage lien. After discovering certain defects which may impact the enforceability and priority of its mortgage lien, Countryside filed the Action and demanded that Fidelity prosecute its claims and indemnify it for any loss. After 15 months Fidelity finally acknowledged its obligation under the Policy, but nevertheless, only agreed to prosecute and defend certain selected claims and for those claims appointed independent counsel. Fidelity's piecemeal defense is a breach of its obligations under the Policy and has resulted in significant prejudice to

its insured. In particular, the two firms now representing Countrywide have filed overlapping summary judgment briefs, representing inconsistent facts, and maintaining different legal positions – which more likely than not (absent immediate corrective action) will materially prejudice Countrywide's legal rights. Accordingly, Countrywide brings this action for a declaration that (a) Fidelity was and currently is obligated to defend it under the terms of the Policy; (b) that Fidelity's failure to defend it was a breach of the Policy; and that (c) Fidelity is responsible for the attorneys' fees and costs incurred to date by Countrywide. To avoid any prejudice, Countrywide requests that the Court issue injunctive relief requiring Fidelity to pay for the defense of all claims asserted in the Action, allow Countrywide to select counsel, and control its defense.

## PARTIES

2.Countrywide is a New York corporation with its principal place of business at 4500 Park Gramada Calabasas, California.

3.Fidelity is a corporation organized under the laws of Delaware with a principal place of business located at 13710 FNB Parkway, Suite 200, Omaha, Nebraska. Upon information and belief, Fidelity is the successor-in-interest to CLT.

## JURISDICTION AND VENUE

4.Pursuant to 28 U.S.C., § 1332, the Court has jurisdiction over this matter as the Plaintiff is a New York corporation, the Defendant is a Delaware corporation and the amount in controversy exceeds $75,000.

5.Pursuant to 28 U.S.C., § 1391, the District of Massachusetts is the proper venue for this action because the policy of insurance which is the subject of this dispute was issued in

Massachusetts and insured Countrywide's interest in residential real property located in Hingham, Massachusetts.

## FACTUAL ALLEGATIONS

*SLM Retains Fidelity's Agent To Conduct A Closing*

6. In or around April, 2004, SLM Financial Corporation ("SLM") retained a Fidelity closing agent, Margaret Connolly ("Connolly"), to represent SLM in a loan to Denise Bruce ("Bruce") to refinance her residence located at 56 Park View Drive, Hingham, Massachusetts (the "Property"). On information and belief Connolly regularly acted as a closing agent for Fidelity on residential real estate transactions in Massachusetts.

7. Pursuant to written closing instructions, (the "Written Instructions"), Connolly agreed to, among other things, prepare, obtain, and supervise the execution and recording of all documents and to disburse all funds as necessary in order to grant and convey to SLM and/or its successors and assigns at settlement/funding a legally valid and enforceable first lien on the Property.

8. To protect SLM from negligence, dishonesty, fraud, bad faith and defalcation or errors in the closing, Fidelity, on information and belief, issued a Closing Protection Letter.

9. On information and belief, the Closing Protection Letter obligated Fidelity to, among other things, indemnify SLM against any loss as a result of the closing agent's negligence, bad faith or fraud.

10. On April 30, 2004, SLM issued a $473,000 loan to Bruce secured by a mortgage on the Property.

11. In conjunction with the closing, Fidelity issued a policy of title insurance to SLM and "its successors and/or assigns" in the amount of $473,000 (the "Policy"). A copy of the Policy is attached as **Exhibit A**.

12. The Policy represented to SLM and its successors and assigns that SLM (and its successors and assigns) would have a legal, valid and enforceable first lien on the Property and insured against

> loss or damage ... sustained or incurred by the insured by reason of:...
>
> 5. the invalidly or enforceability of the lien of the insured mortgage on title;
>
> 6. the priority of any lien or encumbrance over the lien of the insured mortgage.

13. In accordance with the terms of the Policy, Fidelity is obligated to:

> [P]ay the costs, attorneys fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

14. Paragraph 4(a) of the conditions and stipulations of the Policy required Fidelity:

> [U]pon written request by the insured and subject to the option contained in Section 6 of these Conditions and Stipulations, ....at its own cost and without unreasonable delay ...provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this company...

*Fidelity's Agent Fails To Comply With The Closing Instructions*
*And As A Result Fidelity's Lien Is Subordinate To Others*

15. On information and belief, Connolly failed to pay off an existing senior lien of record held by Homecomings Financial LLC ("Homecomings"). Rather than payoff Homecoming's lien, Connolly, on information and belief, forged a discharge and maintained that

the lien had been satisfied. A copy of the allegedly forged discharge is attached hereto as **Exhibit B**.

16. In or around April 2008, Countrywide discovered that its mortgage contained an incorrect description of the Property, that its entire interest had been discharged, and that other mortgages encumbered the Property. To protect its rights, on May 23, 2008, Countrywide filed a Complaint to, among other things, reform the mortgage to correct the description of the Property and reinstate the mortgage under various equitable theories to its original priority position.

17. The Complaint was amended several times and currently contains claims for (1) Reformation; (2) Unjust Enrichment; (3) Equitable Subrogation; and (4) Declaratory Relief. A copy of the fourth amended complaint is attached as **Exhibit C**. In response to the Complaint Homecomings, filed a Counterclaim asserting that its lien was superior to Countrywide's mortgage lien. A copy of the Counterclaim is attached hereto as **Exhibit D**.

*Fidelity Fails To Conduct A Timely Or Reasonable Investigation*

18. By letter dated June 6, 2008, Countrywide made demand on Fidelity to "reimburse it for its loss in the full amount of the policy" and to pay "the costs of correcting this defect in title." Countrywide represented that its letter was a "formal request to clear title…" and requested that Fidelity "advise as to what actions Fidelity intends to undertake in order to protect our client's mortgage." A copy of this letter is attached as **Exhibit E**.

19. Fidelity failed to either indemnify or defend Countrywide. Rather than indemnify or defend Countrywide as it was required under the Policy, Fidelity ignored its obligations for approximately a year. A copy of relevant correspondence to Fidelity requesting that it take action is attached as **Exhibit F**.

20. On May 12, 2009, approximately eleven months after Countrywide filed it claim, Fidelity requested additional information to "assist" in its investigation. On the same day, Countrywide provided all of the requested documents. A copy of Fidelity's request and Countrywide's response are attached as **Exhibit G**.

21. After approximately two additional months of alleged investigation, Fidelity represented that the file was transferred to a "new contact" who would be handling the matter. A copy of an e-mail from Fidelity is attached as **Exhibit H**.

22. After Countrywide had incurred costs and attorneys' fees in prosecuting its covered claims for more than fifteen months, Fidelity finally acknowledged that it "accepts tender of the defense…subject to reservation of rights more fully set forth below." Fidelity agreed to "accept Countrywide's tender of defense as to Count 1 of the Complaint and further accepts the Insured's defense as to those allegations contained in the Cross-Claim filed by Homecomings which alleges [sic] priority over Countrywide," but concluded that the "remaining allegations are outside the scope of policy coverage and the Company respectfully declines to accept the Insured's defense of such allegations." A copy of Fidelity's letter is attached as **Exhibit I**.

23. Notwithstanding Fidelity's acknowledgement of its defense obligations it has failed and refused to pay Countrywide's attorneys' fees and costs incurred in prosecuting its claims for fifteen months.

24. Fidelity's dilatory appointment of counsel for only a portion of the claims asserted in the Complaint has materially prejudiced Countrywide's rights and ability to control its defense.

25. Absent immediate action in the form of an order for specific performance, Countrywide's rights will be irreparably harmed.

26. In good faith by letter dated January 8, 2010, Countrywide identified conflicting motions filed by counsel and requested that Fidelity appoint counsel to defend (and pay for the fees associated with) all of the claims asserted in the Action and allow Countrywide to control its defense. A copy of the letter (with exhibits excluded) is attached as **Exhibit J**. Fidelity has never responded to the request.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

27. Countrywide repeats and incorporates by reference the allegations from paragraphs 1 to 26 as if fully set forth herein.

28. The Policy required Fidelity to, among other things,

- defend and indemnify SLM and its successors and assigns including Countrywide with respect to any litigation in which a third party asserts a claim adverse to the mortgagee's title or interest in the Property; and

- to either remedy or pay for defects impacting the enforceability of the insured's mortgage.

29. Fidelity has breached the terms of the Policy by, among other things, refusing to provide a defense to Countrywide within a reasonable amount of time; failing to pay Countrywide's attorneys' fees and costs to date; refusing to defend all of the claims asserted in the Action; materially interfering with Countrywide's prosecution and defense of its claims by appointing separate counsel; and precluding Countrywide from controlling its own defense.

30. As a result of Fidelity's breach, Countrywide has incurred and continues to incur substantial damages.

## COUNT II
### (Breach of the Covenant of Good Faith and Fair Dealing)

31. Countrywide repeats and incorporates by reference the allegations from paragraphs 1 to 30 as if fully set forth herein.

32. There is an implied covenant of good faith and fair dealing in every contract, including the Policy.

33. Fidelity has breached this covenant of good faith and fair dealing by, among other things, failing to provide a timely response to Countrywide's demand; refusing to provide a defense to Countrywide within a reasonable time; failing to pay Countrywide's attorneys' fees and costs to date; materially interfering with Countrywide's prosecution and defense of its claims by appointing separate counsel; and refusing to defend all claims asserted in the Action.

34. As a result of Fidelity's breach, Countrywide has incurred and continues to incur substantial damages.

## COUNT III
### (G. L. c. 93A/176D)

35. Countrywide repeats and incorporates by reference the allegations from paragraphs 1 to 34 as if fully set forth herein.

36. Fidelity has engaged in an unfair and deceptive act or practice in the business of insurance in violation of G. L. c. 176D by, among other things,

- failing to promptly investigate and resolve a claim;

- refusing to provide timely representation for the Action;

- refusing to pay the attorneys' fees incurred by its insured for the fifteen months before it acknowledged its obligation to defend;

- refusing to respond to its insured;

- refusing to defend all of the claims in the Action;

- precluding the insured from controlling its own defense; and
- intentionally avoiding its obligations under the terms of its Policy.

37. Fidelity's unfair and deceptive practices: (a) have been directed at a company which does business in Massachusetts; (b) are related to property in Massachusetts; and (c) relate to losses incurred in Massachusetts. Thus, the activities occurred primarily and substantially in Massachusetts.

38. Fidelity's violations of chapters 93A and 176D were knowing and willful.

39. As a result Fidelity's knowing and willful breach of chapters 93A and 176D, Fidelity has incurred and continues to incur substantial damages.

## COUNT IV
### (Declaratory Judgment)

40. Countrywide repeats and incorporates by reference the allegations from paragraphs 1 to 39 as if fully set forth herein.

41. An actual controversy exists between Fidelity and Countrywide with respect to the obligations of Fidelity, under the terms of the Policy, to defend and indemnify Countrywide with respect to the Action.

42. Countrywide is entitled to a declaration that Fidelity is required to (i) immediately pay for the defense of Countrywide on all counts of the Action; (ii) indemnify Countrywide against any loss incurred in the Action; and (iii) reimburse Countrywide for all costs and fees it has incurred and continues to incur in defense of the Action.

## COUNT V
### (Specific Performance)

43. Countrywide repeats and incorporates by reference the allegations from paragraphs 1 to 42 as if fully set forth herein.

44. In accordance with the terms of the Policy, Fidelity is obligated to:

> [U]pon written request by the insured and subject to the option contained in Section 6 of these Conditions and Stipulations, ....at its own cost and without unreasonable delay ...provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this company...

45. Notwithstanding the express terms of the Policy, Fidelity has failed and refused to defend all claims in the Action.

46. Countrywide is entitled to an order of specific performance requiring that Fidelity perform its obligations under the terms of the Policy and defend all claims asserted in the Action.

## COUNT VI
### (Injunctive Relief)

47. Countrywide repeats and incorporates by reference the allegations from paragraphs 1 to 46 as if fully set forth herein.

48. Countrywide has a substantial likelihood of success on the merits of its claim for specific performance of the Policy requiring Fidelity to defend the Action.

49. Countrywide has suffered and will continue to suffer immediate and irreparable harm if Fidelity is not required to specifically perform its obligations under the terms of the Policy.

50. The harm that Countrywide will incur if the injunctive relief is not granted substantially outweighs the harm, if any, that Fidelity will incur if the relief is granted.

## COUNT VII
### (Breach of Contract/Closing Protection Letter)

51. Countrywide repeats and incorporates by reference the allegations from paragraphs 1 to 50 as if fully set forth herein.

52. The Closing Protection Letter, on information and belief, required Fidelity to reimburse Countrywide for losses incurred as a result of Connolly's:

- failure to comply with the closing instructions; and
- negligence, bad faith or fraud.

53. Fidelity breached the terms of the Closing Protection Letter by, among other things, failing to reimburse Countrywide for losses resulting from Connolly's failure to comply with the closing instructions and his negligence, bad faith or fraud.

54. Countrywide has sustained damages as a result of Fidelity's breach of the Closing Protection Letter.

**PRAYERS FOR RELIEF**

**WHEREFORE,** Countrywide respectfully requests that this Court:

(a) Enter judgment in favor of Countrywide against Fidelity on each of Counts I to III and VII and award Countrywide its damages after trial, together with interest, costs and attorneys' fees;

(b) Award Countrywide treble damages as a result of Fidelity's knowing and willful violations of G. L. c. 93A and G. L. c. 176D;

(c) Enter judgment in favor of Countrywide against Fidelity on Count IV and declare that Fidelity is obligated to: (i) immediately pay for the defense of Countrywide on all counts of the Action; (ii) indemnify Countrywide against any loss incurred in the Action; and (iii) reimburse Countrywide for all costs and fees it has incurred and continues to incur in defense and settlement of the Action;

(d) Enter judgment in favor of Countrywide on Count V and require Fidelity to specifically perform its obligations under the terms of the Policy including defending

Countrywide in the action, paying its attorneys' fees incurred to date in defending the Action; and if necessary indemnifying Countrywide for any loss it may sustain;

(e) Issue a short order of notice returnable on February 9, 2010 ordering the Fidelity to appear and show cause why a preliminary injunction should not be entered in the form as set forth below.

(f) After a hearing, issue a preliminary injunction requiring Fidelity to defend immediately Countrywide in all claims asserted in the Action and pay Countrywide's attorneys' fees and costs incurred to date pending an adjudication on the merits of Countrywide's claim;

(g) Award Countrywide such other and further relief as the Court deems just and equitable.

COUNTRYWIDE HOME LOANS, INC.
By its attorney,

/s/ Richard E. Briansky
Richard E. Briansky (BBO# 632709)
rbriansky@PrinceLobel.com
PRINCE, LOBEL, GLOVSKY & TYE LLP
100 Cambridge Street, Suite 2200
Boston, MA 02114
Tel: (617) 456-8000
Fax: (617) 456-8100

Dated: February 4, 2010

### VERIFICATION

I, Shawn Mason, being duly sworn, depose and state that I am Vice President of Countrywide Home Loans, Inc.; that the statements contained herein are based my own personal knowledge, business records of Countrywide Home Loans, Inc, conversations with officers, agents, servants or employees of Countrywide Home Loans, Inc, or public records. To the extent that allegations are based on information and belief I have so indicated.